UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

PAULINE SCHWARTZ,

                                                  Plaintiff,

                       -against-

CITY OF NEW YORK; Police Officer JULIO
SANTIAGO, Shield No. 23556; Police Officer MICHAEL
VOSS, Shield No. 25617; Lieutenant JAMES
MARCANTONATOS; Police Officer JONATHAN CHIN,
Shield No. 240; and Police Officers JOHN and JANE
DOES 1 through 10, individually and in their official
capacities, (the names John and Jane Doe being fictitious,
as the true names are presently unknown),

                                                  Defendants

------------------------------------------------------------------------- x

**STATEMENT PURSUANT
TO LOCAL CIVIL RULE 56.1**

12 CV 5624 (AKH) (KNF)

        Defendants, for their Statement Pursuant to Local Civil Rule 56.1, state as follows:

        1.     On May 29, 2011 Lieutenant James Marcontonatos was the Special Operations Lieutenant for the Central Park Precinct.   (Marcontonatos, 8: 14-19;  23-24).

        2.     The Special Operation Lieutenant was responsible for, *inter alia*, the anti-crime team at the Central Park Precinct.  (Marcontonatos, 24: 6-10).

        3.     Lieutenant Marcontonatos' anti-crime team on May 29, 2011 consisted of Officer Santiago, Voss, and Chin.  (Marcontonatos, 9-10).

        4.     Only the anti-crime team conducts lucky bag operations.  (Marcontonatos, 44:14-18).

5. On May 29, 2011, the anti-crime team conducted a lucky bag operation. (Macontonatos, 25: 8-11).

6. In a lucky bag operation the police place a handbag in the park and officers wait to see if anyone removes money from the handbag or attempts to leave with the bag. (Marcantonatos, 13: 13-16).

7. When an individual removes the money from the handbag they are subject to arrest. (Marcontonatos, 30: 8-13).

8. Where an individual only picks up the bag and walks away they are not subject to arrest, because picking the bag up by itself does not violate the law. (Marcontonatos, 30: 13-17).

9. When an individual picks up the bag and walks away with it, an officer will approach the individual pretending to be the owner of the handbag, or husband of the owner, and ask if the individual has seen, or picked up, the handbag. (Marcontonatos, 30: 17-25; 36-37).

10. When an officer approaches an individual to ask whether they have seen or have the handbag the officer poses as a civilian, wearing regular clothes, and without displaying a badge. (Marcontonatos, 25-26; 32: 12-19; 56: 1-9).

11. On May 29, 2011, the anti-crime team used a black Kenneth Cole nylon handbag. (Marcontonatos, 27: 1-18).

12. The bag had a small emblem on it with a man and woman's name on it that were known to Lt. Macontonatos. (Marcontonatos, 60: 20-24).

13. Lt. Marcontonatos uses the emblem with the names on it, or a description of the handbag to prove ownership of the handbag when an individual who has picked up the bag questions his ownership. (Marcontonatos: 60; 20-24; 58: 17-22).

14. On May 29, 2011, a wallet containing $12.00 was placed inside the handbag. (Marcontonatos, 43: 5-7).

15. On May 29, 2011, the bag was placed by police officer Voss under a bench in the literary, or poets, walk of Central Park. (Marcontonatos, 50: 7-23).

16. Plaintiff approached the bench with the handbag underneath it and sat down for 5-15 minutes. (Marcontonatos, 51: 10-12; Schwartz, 22: 4-5).

17. After approximately 15 minutes plaintiff first observed the purse under the bench. (Schwartz, 24:1-7).

18. After noticing the purse, plaintiff claims she waited for the owner to return for approximately 5 minutes. (Schwartz, 25: 15-24).

19. Plaintiff claims she decided to take the purse to the Dairy, an information center south of the literary walk. (Schwartz, 25: 11-14).

20. Plaintiff picked up the purse and placed it inside a plastic bag. The purse was not visible inside this plastic bag. (Schwartz, 26: 12-15; 27: 6-8).

21. Plaintiff proceeded to the southern end of the literary walk when she was approached by Lt. Marcontonatos on a bicycle. (Schwartz, 29: 1-2; Marcontonatos, 54: 15-18).

22. Lt. Marcontonatos asked plaintiff "do you have" or "did you take my wife's handbag?" Plaintiff replied "no." (Schwartz, 29: 2-4; Marcontonatos, 56: 14-15).

23. After she denied taking the handbag plaintiff took three steps forward before she was stopped by the members of the anti-crime team. (Schwartz, 31: 18-21, 32-33).

24. Plaintiff was not aware of the other members of the anti-crime team when she was initially approached by Lt. Marcontonatos. (Schwartz, 31: 4-9).

25. Plaintiff never saw a badge or police identification on Lt. Marcontonatos. (Schwartz, 35: 2-4).

26. There were no park workers or uniformed police in the area at the time plaintiff picked up the handbag and began to walk towards the Dairy. (Marcontonatos, 52: 22-24; 53: 11-14;  Schwartz, 35: 18-24).

27. Plaintiff was placed under arrest by the anti-crime team. (Schwartz 32: 3; Marcontonatos, 64: 22-25).

28. Subsequent to her stop and arrest by the anti-crime team plaintiff claims that she intended to take the handbag to the Dairy. (Schwartz, 35: 5-18).

29. Officer Marcontonatos does not recall plaintiff stating she was taking the bag to the Dairy. (Marcontonatos, 68: 15-20; 95: 21-24).

30. Plaintiff stating she was taking the purse to the Dairy after being placed under arrest would not have affected the decision to arrest her. Even when subjects have separated the cash from the handbag they have stated that they were going to turn the items in to a lost and found when they are stopped by the anti-crime team. (Marcontonatos, 68, 69: 2-6).

31. On identifying himself as a purported owner, or husband of the owner, of the handbag Lt. Marcontonatos has never had someone deny having the bag other than plaintiff. (Marcontonatos, 69: 17-18; 92: 18-23).

32. Plaintiff was transported to the Central park precinct without being handcuffed. (Schwartz, 36: 7-11).

33. Plaintiff was never placed in handcuffs. (Schwartz, 38: 18-22).

34. Plaintiff was never placed in a holding cell. (Schwartz, 38-39).

35. Plaintiff was released with a desk appearance ticket after three to four hours in the police precinct. (Schwartz, 39: 12-15; Exhibit D; 43: 8-17).

36. Plaintiff ultimately accepted an adjournment in contemplation of dismissal. (Schwartz, 54: 4-6, 16-17; 55: 4-5).

37. Lt. Marcontonatos believed he had probable cause to arrest plaintiff when he knew that plaintiff took the handbag, asked her if she had the bag, and she denied having it. (Marcontonatos, 68: 5-10; 69:13-16; 96-97).

38. Lt. Marcontonatos believed that plaintiff was attempting to steal the handbag based upon her concealing the truth about possessing the handbag, not requesting a description of the handbag, or asking about Lt. Marcontonatos' wife. (Marcontonatos, 59: 6-10; 81: 5-12)

Dated:   New York, New York
         April 2, 2013

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New York
                        *Attorney for Defendants*
                        100 Church Street
                        New York, New York 10007
                        (212) 788-1273

By: _____
Andrew Lucas
Assistant Corporation Counsel
Special Federal Litigation Division

TO:  Honorable Alvin K. Hellerstein
United States District Judge
500 Pearl Street
New York, New York 10007

Honorable Kevin Nathaniel Fox
United States Magistrate Judge
500 Pearl Street
New York, New York 10007

Gabriel Harvis
Harvis Wright Saleem and Fett
305 Broadway, 14th Floor
New York, NY 10007